509 So.2d 118 (1987)
STATE of Louisiana
v.
Wanda D. TUGGLE
No. 86 KA 1516.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
*119 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge by Jesse Bankston, Asst. Dist. Atty., for plaintiff/appellee.
Office of the Public Defender, Baton Rouge by David Price, Asst. Public Defender, David Beach, Appellate Counsel, for defendant/appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
Wanda Tuggle was charged by indictment with four counts of aggravated kidnapping, in violation of LSA-R.S. 14:44. Pursuant to a plea bargain agreement, the defendant pled guilty to four counts of simple kidnapping, in violation of LSA-R.S. 14:45. She received concurrent sentences of five years at hard labor for each of the four simple kidnapping convictions. On appeal, the defendant urges as her only assignment of error that the trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1.
The defendant's husband, Ronnie Tuggle, was also indicted for his involvement in this series of criminal transactions. Ronnie Tuggle was tried by jury and convicted of aggravated burglary, attempted aggravated rape, and four counts of aggravated kidnapping. His appeal was recently decided by this Court. See 504 So.2d 1016 (La. App. 1st Cir.1987).[1]
The following facts are derived from Ronnie Tuggle's trial transcript and from detailed offense reports and other information contained in the defendant's presentence investigation report. Shortly before 4:00 p.m. on February 28, 1986, the defendant, Wanda Tuggle, and her husband, Ronnie Tuggle, drove to the victims' (hereinafter referred to as the Doe family) home, located in Baton Rouge, Louisiana. Mr. Doe was at work. The house was occupied by Mrs. Doe and her four children: a daughter, age 10, and three sons, ages 8, 6, and 1. Mrs. Doe was lying on the couch and the two older boys were watching cartoons on television. The daughter was packing a suitcase because she was supposed to spend the night with her grandmother, who was on the way to pick her up. The infant was in his crib. When the daughter heard a car pull into the driveway, she thought it was her grandmother and went to the back door. When she opened the door, Ronnie Tuggle "just walked in." He went into the living room *120 and asked Mrs. Doe if her husband was home, stating that he wanted to talk to him about some yard work. He had cut the grass for the Doe family on several occasions during the previous summer. When Mrs. Doe replied that her husband was not home, Ronnie Tuggle produced a gun and asked Mrs. Doe if she had any diamonds or silver. When she replied that she did not, he asked her about how much money she had in her purse and in her checking account. He informed Mrs. Doe that he needed money to leave town. When she told him to leave the house, he aimed the gun at the face of her six year old son and stated: "[T]his one will be the first to go."
After approximately ten minutes, Ronnie Tuggle told Mrs. Doe that they were going to leave the house with him. When she refused, he grabbed her hair and sweater and jerked, knocking her to her knees. He forced Mrs. Doe and her three older children to leave the house and get into their van. The infant son remained in his crib. When Mrs. Doe was exiting her house, she saw the defendant get into a car and back out of the driveway. Ronnie Tuggle let Mrs. Doe drive the van until they left her subdivision. At that point, he ordered her to move over; and he drove them to the Alamo Plaza Motel on Florida Boulevard. When they exited the van and entered Room 1002, they observed that the defendant had already arrived and was waiting for them. While the defendant remained at the Alamo Plaza Motel with the children, Ronnie Tuggle forced Mrs. Doe to drive to a Fidelity Bank and cash her paycheck and a personal check which amounted to a total of approximately $352.00. At this point, he abandoned the van at a park near the Alamo Plaza Motel. Since his car had been locked with the keys inside it, he used his pistol to shoot the window out of his own car in the presence of Mrs. Doe. He then turned to her and stated: "I guess you know now that it's a real gun."
They got into the Tuggles' car, and Ronnie Tuggle drove to an area of Baton Rouge which was unfamiliar to Mrs. Doe. While in this area, he made a drug purchase. He then drove to another motel where he forced Mrs. Doe to have sexual intercourse with him. After forcing her to take a shower with him, they returned to the Alamo Plaza Motel. They learned that Mrs. Doe's children were hungry, so Ronnie Tuggle forced Mrs. Doe to go with him to get some food for the children. After he purchased some chicken at a fast food restaurant, he drove to several locations attempting to purchase more drugs. After making another drug purchase, he took Mrs. Doe to another motel and again forced her to have sexual intercourse with him. She testified that he never put the gun down even when he forced her to take another shower with him.
When they returned to the Alamo Plaza Motel room, Mrs. Doe persuaded the Tuggles to let her two boys go free. Ronnie Tuggle instructed the defendant to release the two boys. He also told her to purchase some more drugs for him. The defendant drove the two boys to a location in Scotlandville and released them.[2] She then returned to the Alamo Plaza Motel with some drugs, which she gave to her husband. Eventually, Ronnie Tuggle informed Mrs. Doe that he was going to release her ten year old daughter as well. In fact, he took the girl to his house and attempted to have sexual intercourse with her also, but was unable to achieve penetration.
Shortly after Ronnie Tuggle left the Alamo Plaza Motel with her daughter, Mrs. Doe tried to persuade the defendant to release her, or at least let her call the police. As the defendant was trying to decide what to do, law enforcement officers arrived, arrested the defendant, and transported Mrs. Doe to a hospital. A few minutes later, law enforcement officers arrested Ronnie Tuggle at his home and also transported the daughter to a hospital. During this entire episode, Ronnie Tuggle had injected himself with a syringe numerous times. He also injected Mrs. Doe and her daughter. Apparently, he was using cocaine, since tests run at the hospital indicated *121 the presence of cocaine in the urine of both Mrs. Doe and her daughter.

ASSIGNMENT OF ERROR
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La.1984). In light of the criteria expressed by article 894.1, a review of the individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Williams, 464 So.2d 1058 (La.App. 1st Cir.), writ denied, 468 So.2d 571 (La.1985).
Article 1, § 20, of the Louisiana Constitution prohibits the imposition by law of excessive punishment. Furthermore, the jurisprudence reflects that a sentence may violate a defendant's constitutional right against excessive punishment although the sentence is within statutory limits. State v. Jones, 412 So.2d 1051 (La. 1982). However, the trial court has wide discretion in the imposition of sentences; and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Wardlow, 448 So.2d 257 (La.App. 1st Cir.1984).
Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than a needless imposition of pain and suffering. State v. Gray, 461 So.2d 627 (La.App. 1st Cir.1984). A sentence is considered grossly disproportionate if one's sense of justice is shocked when comparing the punishment in light of the harm done to society. State v. Gray, supra.
Reviewing the article 894.1 guidelines, the sentencing record reflects that the trial court found both aggravating and mitigat ing circumstances in this case. The sentencing record reflects that the trial court considered the information contained in the lengthy presentence investigation prepared for this case. According to the presentence investigation, the defendant was age twenty-five and had no dependents. The trial court noted that the defendant had no prior criminal record and had a good employment history. Considering the circumstances of these offenses, the trial court stated: "[S]he (the defendant) was caught up in a situation brought about by Mr. Tuggle's substance abuse. And, certainly, I'm giving and have considered the fact that she was fearful of Ronnie Tuggle." Finally, the trial court noted that the defendant had admitted her guilt by pleading guilty and concluded that her conduct in the instant offenses was the result of circumstances unlikely to recur.
When weighing the aggravating circumstances in this case, however, the trial court ruled out the possibility of a suspended sentence or probation. The trial court noted that the victims did nothing to induce or facilitate the commission of these offenses. The trial court also noted that, except for the defendant's fear of her husband, there were no grounds to excuse or justify her conduct. Although defense counsel had characterized the defendant's actions as "acts of omission, rather than commission", the trial court disagreed, concluding that the defendant actively participated in the commission of these offenses by holding Mrs. Doe and her three children at the Alamo Plaza Motel against their will. While the trial court noted that the defendant eventually released the two boys, it also concluded that the defendant's actions "continued this night of horror sustained by this family." The trial court also noted that the evidence indicated that the defendant purchased cocaine for her husband and brought it back to the motel room for him. Finally, the trial court concluded that a lesser sentence would deprecate the seriousness of the offense.
For the instant convictions, the defendant received four concurrent sentences *122 of five years at hard labor. By pleading guilty to four counts of simple kidnapping, the defendant significantly reduced her sentencing exposure for these offenses.[3] Had she been convicted of four counts of aggravated kidnapping, as originally charged in the indictment, she would have received four mandatory sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:44. Contrary to the defendant's assertion in brief, we find that the trial court complied with the sentencing guidelines provided in LSA-C.Cr.P. art. 894.1. In light of the reasons for sentencing given by the trial court, and considering the circumstances of the instant offenses, we find that the sentences imposed in the instant case are neither grossly disproportionate to the crimes nor an abuse of the trial court's great discretion.
For the above reasons, this assignment of error is meritless.
The convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Although Ronnie Tuggle is not a party to the instant appeal, the trial court ordered a copy of his trial transcript included in the instant record to allow this Court to review thoroughly the extent of the defendant's involvement in these offenses.
[2] There is some indication that the defendant telephoned Mr. Doe and informed him where the two boys could be located, but this fact is uncertain.
[3] It is proper for a court to consider the benefits of a reduced penalty exposure which the defendant obtained as the result of a plea bargain. See State v. Lanclos, 419 So.2d 475, 478 (La.1982).