623 So.2d 74 (1993)
STATE of Louisiana
v.
Henry L. BENNETT, Jr.
No. KA 92 1715.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
*75 Doug Moreau, Dist. Atty., Baton Rouge, by Ernest Smithing, Asst. Dist. Atty., for plaintiff/appellee.
Kathryn Flynn, Asst. Public Defender, for defendant/appellant.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
WHIPPLE, Judge.
Henry L. Bennett, Jr., was indicted by the East Baton Rouge Parish Grand Jury for the first degree murder of Terry Stanley Baggett, in violation of LSA-R.S. 14:30(A)(6). After the state agreed to accept a plea of guilty to the responsive offense of manslaughter, the indictment was amended and defendant pled guilty to that offense.[1] The trial court imposed the maximum sentence of twenty-one years at hard labor and ordered the sentence to be served consecutively to any other sentence defendant might then be serving.
Defendant filed a motion to reconsider sentence, urging that the sentence was excessive, the court failed to consider applicable mitigating factors, and the court erred by refusing to impose a concurrent term. The trial court denied the motion to reconsider sentence. Defendant appealed, urging in his only assignment of error that the court imposed an excessive sentence and failed to comply with the sentencing criteria of LSA-C.Cr.P. art. 894.1.
According to the factual basis of the plea presented by the state during the Boykin examination, the victim was killed during a drug transaction. In a written plea agreement signed by defendant and his attorney and during the Boykin examination, defendant admitted that no promises had been made to him regarding the length of the sentence to be imposed.
Defendant argues that the sentence of twenty-one years at hard labor is not in conformity with the sentencing guidelines, which became applicable January 1, 1992. He claims that the court failed to justify its departure from the designated sentencing range and that the aggravating circumstances cited by the court in its reasons for determining the sentence are not contained in the list of aggravating circumstances which the court should have considered. He also claims that the record contains an extensive listing of his juvenile offenses, although the court stated that it would not take his juvenile record into consideration. Defendant notes that, as a first felony offender, he was classified as a "1-F" on the grid. He claims that the court specifically refused to impose the sentence recommended by the schedule and that he is entitled to be resentenced in conformity with the sentencing guidelines.
Prior to the imposition of sentence, defendant's attorney noted that the maximum sentence recommended under the sentencing guidelines grid was twelve or thirteen years. Counsel noted that defendant's connection with a notorious murder in Baton Rouge was well-known throughout the area and that he "has been branded" with that offense since he was sixteen years old. Counsel further *76 argued that, although the state did not contend that defendant fired the shots that killed this victim, the state apparently intended not to pursue charges against the two accomplices alleged to have shot the victim.
In its reasons for sentence, the court noted defendant's extensive juvenile record and his involvement in the murder prosecution. The court further noted that, although defendant technically was a first felony offender, he previously had pled guilty to a charge of distribution of cocaine as an adult. Finally, the court asserted that it had calculated defendant's classification under the grid schedule and rated him a "1-F" on the schedule. Before imposing sentence, the court stated as follows:
Let me say right off the bat, that I find the sentencing guideline's grid, in many cases, preposterously too lenient. Iand since they are not obligatory on me, I reject them in principle, in practice and in fact. I do find some of theirsome of their factors to be considered as relevant. And let me say this before I sentence you, Mr. Bennett, I do not take into consideration the Willie Strowder case or any other case. I take into consideration this case, which involves the death of a human being and the related factual consideration [sic] thereto, coupled with the recommendations of the Louisiana Department of Corrections, who recommended a recommended a [sic] maximum sentence. I don't know if you had a chance to review this, counsel, but they recommended the maximum sentence.
The court then noted that, during the period of a suspended sentence, an undue risk existed that defendant would be in trouble again. The court stated that defendant was in need of correctional treatment "to a high degree" and that a lesser sentence would deprecate the seriousness of the crime. The court found that no compensation to the victim was possible and noted that defendant had a lengthy history of criminal activity. The court further noted that information contained in the pre-sentence investigation report indicated that defendant's conduct was based on circumstances likely to recur, that defendant had "a complete void of remorse" for this offense, and that his character and attitude indicated he was likely to commit another offense and was unlikely to respond to lesser treatment. The court concluded that it was "rejecting the guidelines as being unacceptable and inappropriate under these circumstances for the factors articulated."
The sentencing grid, containing recommended sentencing ranges for various offenses, was published by the Louisiana Sentencing Commission, created by Acts 1987, No. 158. Enactment language for the creation of the commission noted that its recommendations were to be advisory only. See LSA-R.S. 15:321, which provides as follows:
A. The enactment of statutes defining criminal offenses and the establishment of ranges of penalties for those offenses is a matter of substantive law solely within the prerogative of the legislature. The determination and imposition of sentence in particular cases is generally the function of the sentencing court, subject to appellate review and to mandatory sentences provided by law.
B. The legislature has determined that the best interest of the state would be served by the development and implementation of a uniform sentencing policy for use by the Louisiana judiciary. The purpose of the Louisiana Sentencing Commission is to assist the judiciary by formulating such policy in the form of advisory sentencing guidelines to be considered in determining sentences in particular cases.

C. The commission may recommend such legislation as may be necessary and appropriate to achieve a uniform sentencing policy. (Emphasis added.)
Thus, in creating the Sentencing Commission, the legislature reconfirmed that the determination of the range of sentences that can be imposed for a specific offense is the legislature's unique prerogative, a special power long recognized by the reviewing courts. See State v. Barberousse, 480 So.2d 273, 280 (La.1985). However, the legislature also recognized that the determination of the specific sentence to be imposed in a particular case is a special function of the trial judge.
*77 Since the promulgation of the regulations adopted by the Sentencing Commission, the various courts of appeal have considered the effect of those regulations, specifically with regard to the extent to which the record must reflect consideration or compliance with the sentencing grids. In State v. Brown, 616 So.2d 792 (La.App. 2nd Cir.1993), the Second Circuit vacated the sentences imposed by the trial court and remanded for resentencing because, although the court mentioned the sentencing guidelines, it did not consider all of the provisions of the guidelines. The Second Circuit set forth several factors it will require the trial court to consider on the record before it will review a sentence for compliance with the guidelines. Brown, 616 So.2d at 794. See also State v. Tracey, 612 So.2d 984, 986 (La.App. 2nd Cir.1993), in which the court held that, since the trial court did not consider the guidelines, the appellate court was required to reverse and vacate the defendant's sentence and remand for resentencing.
In State v. Guillory, 617 So.2d 151 (La. App. 3rd Cir.1993), the Third Circuit held that LSA-C.Cr.P. art. 894.1(A) "clearly mandates that the trial judge consider the sentencing guidelines in determining the appropriate sentence to impose when a defendant has been convicted of a felony." However, in State v. Trahan, 608 So.2d 679, 684 (La.App. 3rd Cir.1992), the court held that the trial court is not required to "strictly comply" with the guidelines so long as the trial court considers the guidelines.
Possibly, the most extreme requirement imposed to date by the intermediate appellate courts is found in State v. Smith, 610 So.2d 152, 155 (La.App. 4th Cir.1992), in which that court held that "[i]t is an abuse of the trial court's discretion to impose a sentence that grossly deviates from the guidelines when that deviation is not supported by the record." The court indicated that it will not require "rigid conformity" to the guidelines, but that it will require that the guidelines be "consulted and used as a norm."
With due respect to the opinions of our brethren on these courts, we find no statutory or constitutional authority to support either the view that a court is required to vacate a sentence unless the record thoroughly reflects consideration of all aspects of the sentencing guidelines or that a sentence not in conformity with the guidelines necessarily results in an abuse of the trial court's discretion if the sentence is not otherwise supported by the record.
Prior to the adoption of the Louisiana Constitution of 1974, the Louisiana Supreme Court concluded that a sentence within statutory limits was not subject to review. State v. Butler, 302 So.2d 585, 589 (La.1974). Even after the adoption of the 1974 Constitution, the Louisiana Supreme Court continued to hold that a legal sentence was not subject to review. See State v. Frank, 344 So.2d 1039, 1044 (La.1977).
In State v. Sepulvado, 359 So.2d 137 (La. 1978), the Louisiana Supreme Court held for the first time that, before imposing a sentence of imprisonment, the trial court should consider sentencing considerations set forth in LSA-C.Cr.P. art. 894.1, adopted by Acts 1977, No. 635, effective September 9, 1977. Thereafter, in State v. Sepulvado, 367 So.2d 762 (La.1979), the Court determined that the inclusion of the term "excessive" in La. Const.1974, Art. 1, § 20, subjected sentences within statutory limits to review for constitutional excessiveness, as follows:
We thus find that the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this court on appellate review of his conviction.
Sepulvado, 367 So.2d at 767.
Following Sepulvado, the Court held that the sentencing factors set forth in former LSA-C.Cr.P. art. 894.1 were useful for a reviewing court to gauge the constitutional excessiveness of a particular sentence; thus, a sentence could be vacated and remanded if the trial court failed to state for the record the factors it considered in determining the sentence. State v. Cox, 369 So.2d 118, 124-125 (La.1979). While the trial judge was not required to recite the entire checklist of former article 894.1, the record had to reflect that the judge adequately considered the guidelines. State v. Soco, 441 So.2d 719, 720 *78 (La.1983). However, even in the absence of compliance with former LSA-C.Cr.P. art. 894.1, a reviewing court was not required to remand for resentencing, as long as the record as a whole justified the sentence. State v. Davis, 448 So.2d 645, 653 (La.1984). In fact, as the Court noted in State v. Wimberly, 414 So.2d 666 (La.1982), a sentence imposed without compliance with former LSA-C.Cr.P. art. 894.1 was not an illegal sentence.
In Wimberly, 414 So.2d at 670, the Court noted:
The Louisiana Constitution of 1974 does not specifically authorize this court to review, modify or vacate a sentence because of leniency. Arguably, we could substitute our judgment for that of a trial judge under our supervisory jurisdiction even though the sentence he has imposed is fully consistent with the constitution and the law. The constitutional grant of supervisory authority to this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. In practice, however, certain limitations upon the use of this power are recognized by this court out of respect for the independence of other courts in the determination of questions confided to their judicial discretion, and to avoid usurping merely appellate jurisdiction not conferred upon us by the constitution. We have generally restricted the use of supervisory jurisdiction to those cases `where there is a clear usurpation of power not confided by law, or a refusal to perform some duty plainly imposed by law, and which [the lower courts] have no discretion to refuse, and when there is an entire absence of other adequate remedy.' In order for us to set aside a constitutionally and statutorily permissible sentence, therefore, the trial court's action must clearly fall within one of these recognized exceptional categories.

(Citations omitted.) (Emphasis added.)
Above all, the trial court's wide discretion in determining the appropriate sentence has highlighted jurisprudence considering sentence review. See State v. Abercrumbia, 412 So.2d 1027 (La.1982).
Thus, in light of the historical role of the trial court in determining sentence, subject to review only for constitutional excessiveness and to insure that the sentence is within the statutory limits, as well as the clear intention that the recommended sentences in the guidelines are advisory only,[2] we conclude that a trial court is within its authority to reject any sentence recommended by the sentencing guidelines; and, thereafter, the sentence is subject to review for legality (within statutory limits) and constitutional excessiveness only.
Since only an illegal or constitutionally excessive sentence can corrected by a reviewing court, the failure to comply with the sentencing guidelines or to ensure that the record reflects compliance with every aspect of the sentencing guidelines, is not the violation of a duty "plainly imposed by law." Moreover, an adequate remedy exists in the power of the reviewing court to remand for resentencing or a more thorough recital of the court's sentencing considerations where the sentence appears to be constitutionally excessive and the record does not support the sentence.
Herein, we are concerned with the trial court's apparent rejection of the sentencing guidelines in toto by its statement that "since they are not obligatory on me, I reject them in principle, in practice and in fact." However, the court's later statement that it was "rejecting the guidelines as being unacceptable and inappropriate under these circumstances for the factors articulated" indicates that the court clearly intended to tailor the sentence to the particular offender *79 and the particular offense and that it declined to follow the sentencing guidelines with regard to this sentence specifically. Both through the statements of counsel and through its own calculations, the court was well aware of the sentence recommended by the sentencing guidelines. Thus, we find that the court considered and rejected the sentencing guidelines; therefore, we review the sentence not for compliance with the guidelines but for constitutional excessiveness.
Although defendant claims the court specifically stated that it had not taken his juvenile record into consideration, the court's remarks were somewhat ambiguous. In response to counsel's remarks about defendant's involvement in and incarceration for another murder prosecution, the court stated as follows:
Mr. Marabella, ... you brought up his juvenile record, as to how long he has been in jail since a certain age. I did look at his juvenile record. I'm not taking that into consideration. I am going to tell you what I am taking into consideration later. But since you brougt [sic] it up, [the court then listed several juvenile adjudications, including an offense for which defendant was] counseled and warned, which I don't view as an [sic] conviction, but it's something that I think that can be considered in that it wasn't a dismissal or nolle prosed. [sic] [The court then listed other juvenile offenses.]
We are unable to determine if, by stating "I'm not taking that into consideration", the court decided to impose sentence without consideration of defendant's juvenile record or if the court was noting that it had not considered defendant's involvement in a prosecution that resulted in an acquittal. Since the court obviously was well aware of defendant's juvenile record, noted that he had an extensive criminal history, and also stated its concern that, if he received a lesser sentence, an undue risk existed that defendant would be in trouble again, it appears that the court did consider defendant's lengthy history of juvenile adjudications and other criminal activity. Defendant's juvenile history is an appropriate sentencing consideration. See State v. Knox, 446 So.2d 1211 (La.1984). The court noted the recommendation of the pre-sentence investigation report that the maximum sentence permissible be imposed and stated that the report indicated defendant's conduct was based on circumstances likely to recur. The court found that defendant continued to express no remorse for this offense, that his character and attitude indicated he was likely to commit another offense and that he was unlikely to respond to lesser treatment.
Moreover, defendant obviously received a substantial benefit when the state agreed to reduce the first degree murder charge and accept a plea of guilty to manslaughter. See State v. Tuggle, 509 So.2d 118, 122 (La.App. 1st Cir.1987). Accordingly, we find no merit in defendant's claim that his sentence is excessive or that the court failed to justify the sentence. Accordingly, defendant's conviction and sentence are hereby affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The record indicates that other charges were dismissed in connection with the sentence imposed for this offense. Following the imposition of sentence, the assistant district attorney noted that four bills of information, charging arson, battery of a police officer, second degree battery, and "the other one relating to Kevin Brumfield" would be dismissed "in connection with the sentence today." Since that agreement was not noted during the Boykin examination, it appears that dismissal of those charges may have been contingent upon defendant's receiving this sentence and that any diminution of sentence could result in the reinstatement of the charges.
[2] Besides the clear language in LSA-R.S. 15:321 that the guidelines promulgated by the Sentencing Commission are to be advisory only, other limitations on the mandatory use of the sentencing guidelines are contained in LSA-C.Cr.P. arts. 881.6 and 894.1(A), both of which provide that a sentence shall not be declared unlawful, inadequate or excessive solely because it is not in compliance with the sentencing guidelines. See also LSA-C.Cr.P. art. 881.4(D), which provides that an appellate court cannot set aside a sentence merely because it was not in compliance with the sentencing guidelines, nor can it set aside a sentence as excessive if the record supports the sentence imposed.