724 So.2d 215 (1998)
STATE of Louisiana
v.
Wybra JACKSON.
No. 98 KA 0004.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
*216 Walter J. Senette, Jr., Assistant District Attorney, Franklin, for Appellee State.
Susan K. Johns, New Iberia, for Defendant-appellant Wybra Jackson.
BEFORE: GONZALES, KUHN, and WEIMER, JJ.
WEIMER, Judge.
Defendant, Wybra Jackson, was charged by bill of information with one count of possession of cocaine with intent to distribute, a violation of LSA-R.S. 40:967(A), and one *217 count of possession of cocaine over 28 grams but under 200 grams, a violation of LSA-R.S. 40:967(C), (F). On the second day of trial, defendant withdrew his plea of not guilty and pled guilty as charged to possession of cocaine with intent to distribute. The state agreed to dismiss the remaining charge against defendant, not to initiate proceedings based on the habitual offender law,[1] and to dismiss the charges against his wife. After a sentencing hearing, the trial court sentenced defendant to imprisonment at hard labor for twenty-one years, recommending that defendant receive drug rehabilitation treatment before his release. Defendant has appealed, raising six assignments of error relating to his sentence.

FACTS[2]
While executing a search warrant at defendant's residence on February 25, 1997, the Morgan City Police discovered 30.7 grams of crack cocaine. They also found a large amount of currency, including some marked currency which had been used by the police on prior occasions to purchase cocaine at the residence. At his Boykin hearing, defendant admitted it was his intent to distribute the crack cocaine found in his residence.
ASSIGNMENT OF ERRORS
1. The trial court erred in considering as a sentencing factor that the people of the state or community are strongly opposed to drug sales and use.
2. The trial court erred in imposing a sentence based on bias and prejudice.
3. The trial court erred in failing to consider mitigating circumstances.
4. The trial court erred in allowing policemen to testify at the sentencing hearing as to their belief that defendant was involved in other drug sales, and in basing its sentence on that assumption.
5. The trial court erred in imposing a constitutionally excessive sentence.
6. The trial court erred in allowing the state to introduce a videotape at the sentencing hearing.

RIGHT TO APPEAL SENTENCE
Initially, we will address the state's contention that defendant does not have a right to appeal his sentence because: (1) he failed to file formal assignment of errors as required by Louisiana Code of Criminal Procedure article 844[3]; and (2) he pled guilty pursuant to a plea bargain with a sentencing cap. We find both contentions to be without merit.

A. The Requirement of an Assignment of Errors:
Article 920 of the Louisiana Code of Criminal Procedure provides that the scope of appellate review extends only to errors designated in the assignment of errors and error patent on the face of the record. Therefore, some type of designation of error is required to consider errors not patent on the face of the record. However, while defendant herein did not file a formal assignment of errors, the extent to which a defendant needs to separately designate errors outside the appellate brief is unclear.
In State v. Galliano, 93-1101, p. 2 (La.App. 1 Cir. 6/24/94), 639 So.2d 440, 442, this court initially refused to consider six assignments of error argued in brief but not contained in the formal assignment of errors. Thereafter, in a brief per curiam, the Louisiana Supreme Court remanded the appeal to this court for consideration of the merits of the assignment of errors raised in brief for the first time, noting "[t]he court of appeal may require relator to file supplemental assignments of error in the district court to provide that court with the opportunity to respond." State v. Galliano, 94-2030, 94-2280 (La.1/6/95), 648 So.2d 911.
*218 After the Galliano remand, several panels of this court concluded that assignments of error raised in this court in the first instance should be considered to the same extent the court considered errors formally designated under Louisiana Code of Criminal Procedure article 844. See State v. Galliano, 93-1101, p. 2 n. 1 (La.App. 1 Cir. 5/5/95), 655 So.2d 538, 540 n. 1 (which criticized the remand by the Louisiana Supreme Court). See also State v. Barnett, 96-2050, p. 2 n. 2 (La.App. 1 Cir. 9/23/97), 700 So.2d 1005, 1007 n. 2; State v. Cousin, 96-2035, p. 2 n. 3 (La.App. 1 Cir. 9/23/97), 700 So.2d 1016, 1017 n. 3, writ denied, 97-2809 (3/13/98), 712 So.2d 875; State v. Johnson, 96-1834, p. 2 n. 4 (La.App. 1 Cir. 6/20/97), 697 So.2d 288, 289 n. 4.
In its earliest form, Article 844 required that a defendant seeking appellate review file a formal bill of exceptions, signed by the trial court, setting forth the circumstances of the alleged error and the evidence on which it was based. Thereafter, the Legislature dispensed with the need to file a formal bill of exceptions, replacing it with a written assignment of errors. However, the trial court determined the date by which the assignment of errors should be filed, and the appealing party was required to furnish a copy of the assignment of errors to the trial court to enable the court to file per curiam comments.
By Acts 1997, No. 642, the Louisiana Code of Criminal Procedure article 844 was again rewritten.[4] Comments to the 1997 amendment indicate the change was expressly for the purpose of expediting the appellate process by allowing the clerk of the trial court to lodge the record before preparation of the assignment of errors. Now, the party appealing must file a written designation of errors with the appellate court, "in accordance with the uniform rules of the appropriate appellate court.[5]" While the trial court (and all counsel) must still be furnished with a copy of the specified errors, the lower court no longer even determines the time frame for filing the errors, a dramatic change from when that tribunal had to sign bills of exception before a party could appeal.[6]
Thus, we acknowledge that the procedures for filing the assignment of errors are unclear. While Galliano has been interpreted as requiring the appellate courts to consider the merits of assignments of error raised for the first time in brief, the Louisiana Supreme Court may have intended for the appellate court to order the assignment of errors argued in the brief to be filed in the district court (although presumably that filing would not be in conformity with the time delays set by the trial court under Article 844).[7] In any *219 event, even prior to the most recent amendment to Article 844, the time delays and necessity for filing the formal assignment of errors became unclear.
Article 844 now requires the assignment of errors to be filed in the appellate court "in accordance with the uniform rules of the appropriate appellate court." The Uniform Rules do not contain a specific provision requiring a separate assignment of errors. Rather, the only requirements for filing an assignment of errors, and the time delays for the filing, are provided in the rules pertaining to the contents of the record and the filing of briefs. See Uniform RulesCourts of Appeal, Rule 2-1.8, concerning the order of items to be included in the record; and Rule 2-12.4, listing the items to be included in the appellant's brief.[8] To the extent that Rule 2-1.8 requires the "assignments of error" to be included in the record and Rule 2-12.4 requires "a specification or assignment of alleged errors" to be designated in the brief, the Uniform Rules as currently written provide a hazy procedure for designating error in the appellate courts.
At this time, statutory provisions, the Uniform Rules, and jurisprudential interpretations thereof are apparently in conflict regarding the necessity of and procedure for filing and designating assignment of errors.
Although the matter is less than clear, this court believes that the filing of an assignment of errors in brief in compliance with Rule 2-12.4 satisfies the provisions of Article 844 which require that "[t]he party appealing shall file with the appellate court a written designation of those errors which are to be urged on appeal."

B. Complaint about sentence following plea bargain:
Similarly, we disagree with the state's contention that defendant is precluded by Louisiana Code of Criminal Procedure article 881.2(A)(2) from seeking review of his sentence, because he pled guilty pursuant to a plea bargain with a sentencing cap. Article 881.2(A)(2) provides that a defendant cannot seek "review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." The Louisiana Supreme Court has held that the prohibition of Article 881.2(A)(2) is applicable to plea agreements involving sentencing caps, as well as to those involving specific sentences. See State v. Young, 96-0195, p. 5 (La.10/15/96), 680 So.2d 1171, 1174; State v. Fairley, 97-1026, p. 4 (La.App. 1 Cir. 4/8/98), 711 So.2d 349, 352.
Before accepting defendant's guilty plea in the instant case, the trial court informed defendant that his sentence would be final and could not be appealed. Defendant indicated he understood. However, our review of the Boykin examination reveals there was no agreement between the parties either as to a specific sentence to be received by defendant or as to a "cap" or maximum sentence that could be imposed upon him. In fact, when advising defendant of the possible sentence that could be imposed, the trial court merely recited the range of possible *220 sentences provided by LSA-R.S. 40:967 B(1), i.e., five to thirty years, plus a fine of not more than $50,000.00, or both.[9] (R 130) Thus, in the absence of a plea agreement setting forth either a specific sentence or a maximum sentence, we find that defendant is not precluded by Article 881.2(A)(2) from seeking review of the sentence imposed herein. See Fairley, 97-1026 at p. 5, 711 So.2d at 352.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendant argues the trial court did not particularize the sentence to him as required by Louisiana Code of Criminal Procedure article 894.1. In particular, defendant contends that the judge's personal attitude toward drugs and drug dealers dictated the sentence rather than the factors enumerated in Article 894.1.
Defendant's argument is based on the following comments made by the trial judge in imposing sentence:
One of the worse crimes I know of, from my point of view and certainly not in your culture and not in youreven in your psyche now [,] is the sale of crack cocaine. It is horrible poison, the most addictive drug ever known to mankind and yet you made money on it. And I call that blood money.
It has been held that a trial judge fails to impose an individualized sentence in regard to a violation of the controlled dangerous substances law when he concentrates on the pervasiveness of drugs in society or allows his personal feelings toward the crime to interfere with his duty. See State v. Bourgeois, 406 So.2d 550, 554 (La.1981); State v. Stroud, 438 So.2d 1172, 1179 (La.App. 3 Cir. 1983).
In the present case, the trial judge's reasons clearly indicate he considered the sale of crack cocaine to be among the most serious of crimes because of its highly addictive nature. However, a careful review of the judge's sentencing reasons in its entirety, attached hereto as Appendix A, indicates the judge's primary emphasis was on factors pertaining to defendant individually, including his prior criminal history, the likelihood that he would commit a similar crime, and the fact that he was on probation for another offense when he committed the present offense. The sentencing reasons as a whole demonstrate that the trial judge clearly particularized the sentence to this defendant in compliance with Article 894.1.
In this respect, the present case differs from State v. Davis, 511 So.2d 91 (La.App. 3 Cir.1987), which defendant cites in support of his argument. In Davis, the defendant was sentenced to three years at hard labor despite the trial court's conclusions that there was no undue risk defendant would commit a similar crime, that defendant was particularly likely to respond to probationary treatment, and that defendant was not in need of correctional treatment in a custodial environment. Furthermore, the trial court in Davis indicated that it did not suspend sentences on distribution convictions as a matter of policy. Under these circumstances, the third circuit court of appeal vacated the sentence, stating:
[W]e can only conclude from the sentencing reasons that the prevalence and seriousness of marijuana distribution and the trial court's personal attitude and policy regarding this offense dictated the sentence. Davis, 511 So.2d at 92.
The present case is distinguishable from Davis in that, despite the fact that the trial court considered distribution of crack cocaine to be among the most serious of offenses, the court's emphasis in imposing sentence was clearly on individualizing the sentence to defendant. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error, defendant contends the trial court was biased and prejudiced against him because of the court's *221 perception that he was a member of the drug culture. He further argues that the court was unwilling to consider evidence of his good character and attitude, as presented by several family members and friends who testified at the sentencing hearing, because the court also considered them to be part of this same "culture." Defendant maintains this prejudice is evident from the trial court's comment at sentencing that "[o]ne of the worse crimes I know of, from my point of view and certainly not in your culture and not in youreven in your psyche now [,] is the sale of crack cocaine." (Emphasis added by defendant.)
A review of the sentencing reasons does not support defendant's claim that the trial court was unwilling to consider defendant's particular character and attitudes because of the court's bias and prejudice against drug offenders. The comment pointed out by defendant merely reflects the trial court's opinion of the seriousness of this offense. However, this factor was only one of the considerations taken into account by the trial court. In individualizing the sentence to defendant, the trial court also considered defendant's personal history, his prior criminal history, the circumstances of the offense, the likelihood that defendant will commit another crime, and his potential for rehabilitation.
Moreover, the record does not support defendant's assertion that the trial court was unwilling to consider the testimony of the character witnesses presented on his behalf. The fact that this testimony did not persuade the trial court that defendant was unlikely to commit another crime or that he was a good candidate for rehabilitation does not denote failure of the trial court to consider the testimony. To the contrary, the record specifically reflects that the court considered this testimony, since it summarized the testimony of each of these witnesses before imposing sentence. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, defendant asserts the trial court failed to comply with Louisiana Code of Criminal Procedure article 894.1(B) because it failed to consider mitigating circumstances. However, defendant does not specify any particular mitigating circumstances which are applicable herein. Nor does our review of the record indicate the presence of any mitigating factors not considered by the trial court in imposing sentence. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Through this assignment of error, defendant argues the trial court erred in allowing two policemen to testify as to their belief that defendant was involved in drug sales other than the instant offense, and in basing defendant's sentence on that assumption. However, in brief, defendant only argues that the trial court erred in allowing Officer Mike Marino to testify that the purpose of having a police scanner is to monitor police calls and the location of police units, which is of assistance to drug dealers. Officer Marino further indicated that a small-time or street-level drug dealer typically would not have a police scanner. A police scanner was found at defendant's residence when the police executed their search warrant.
Prior criminal activity is one of the factors to be considered by the trial court in sentencing a defendant. LSA-C.Cr.P. art. 894.1. Prior criminal activity is not limited to convictions. State v. Rankin, 563 So.2d 420, 423 (La.App. 1 Cir.1990). In this case, we note that defendant and his mother each testified at the sentencing hearing that defendant has been selling drugs for some time. In fact, defendant admitted he has sold drugs over fifty times. Therefore, regardless of whether the trial court erred in allowing Officer Marino to give his opinion as to the purpose of a police scanner, any error in doing so was harmless. Officer Marino's testimony was cumulative of other properly admitted evidence, including defendant's own testimony, which clearly established that defendant was a drug dealer of long-standing duration. See LSA-C.Cr.P. art. 921; State v. Amato, 96-0606, pp. 18-19 (La.App. 1 Cir. 6/30/97), 698 So.2d 972, 986, writs denied, 97-2626, 97-2644 (2/20/98), 709 So.2d 772. This assignment of error lacks merit.

*222 ASSIGNMENT OF ERROR NUMBER FIVE
In assignment of error number five, defendant alleges the trial court imposed an excessive sentence and failed to comply with the requirement of Louisiana Code of Criminal Procedure article 894.1 that the sentence be individualized to him. Initially, we note that we have already considered and rejected defendant's arguments that the trial court failed to consider mitigating factors and to individualize the sentence to him. Thus, the only additional issues raised by this assignment are whether the trial court's sentencing reasons adequately complied with Article 894.1 and whether the sentence imposed was constitutionally excessive.
Defendant's conviction exposed him to a minimum sentence of five years and a maximum sentence of thirty years imprisonment at hard labor. Additionally, a fine of up to $50,000.00 could have been imposed. LSA-R.S. 40:967 B(1). Defendant was actually sentenced to twenty-one years at hard labor, with no fine imposed. On appeal, he requests that this court vacate that sentence, and impose a sentence of seven years.
A trial court has wide, although not unbridled, discretion in imposing a sentence within statutory limits. State v. Trahan, 93-1116, p. 25 (La.App. 1 Cir. 5/20/94), 637 So.2d 694, 708. Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. The sentence imposed by the trial court will not be set aside absent a showing of manifest abuse of the trial court's wide discretion. State v. Andrews, 94-0842, pp. 8-9 (La.App. 1 Cir. 5/5/95), 655 So.2d 448, 454.
A trial court should give weight to the sentencing guidelines and must state for the record the considerations taken into account and the factual basis for the sentence imposed. LSA-C.Cr.P. art. 894.1(B) and (C). The trial court is not required to list every aggravating or mitigating factor as long as the record shows ample consideration of the guidelines. Thus, even without full compliance with Article 894.1, remand is unnecessary when the record clearly reflects an adequate basis for the sentence. State v. Ledet, 96-0142, p. 17 (La.App. 1 Cir. 11/8/96), 694 So.2d 336, 346, writ denied, 96-3029 (9/19/97), 701 So.2d 163. Moreover, under Article 881.4(D), an appellate court will not set aside a sentence as excessive if the record supports the sentence imposed. See State v. Bennett, 623 So.2d 74, 78, n. 2 (La.App. 1 Cir.1993), writ denied, 93-2128 (3/11/94), 634 So.2d 404.
In imposing sentence herein, the trial court stated there was every indication that defendant was likely to continue a pattern of criminal behavior, based on his past criminal record and the fact that he was on probation for another offense when he committed the instant offense. Further, the court found that it was unlikely that defendant would respond affirmatively to probationary treatment, and noted the seriousness of defendant's offense.
The record supports the trial court's conclusions. Defendant admitted that, even after his release from a juvenile facility to which he was committed on a drug charge, he continued to sell drugs. The record also reflects that defendant has a conviction for aggravated battery, as well as numerous arrests. Moreover, not only was defendant on probation at the time of this offense, he had already violated the terms of that probation on a prior occasion. However, rather than revoking his probation, the trial court in that matter committed defendant to house arrest, allowing him to remain out of jail. Despite being given this additional opportunity, defendant committed the instant offense while under house arrest.
The trial court's sentencing reasons adequately complied with Article 894.1. In any event, considering the totality of the circumstances, the sentence imposed was not excessive. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER SIX
In his final assignment of error, defendant asserts that the trial court erred in *223 allowing the state to introduce a videotape (state exhibit 1) at the sentencing hearing, since he was not provided with a copy of the videotape in response to his discovery motion requesting copies of all tangible objects in the state's possession.
Louisiana Code of Criminal Procedure article 718(3) requires the state, upon motion of the defendant, to permit the defendant to inspect and copy all tangible objects in its possession which were obtained from or belong to the defendant. The failure to comply with discovery duties is governed by LSA-C.Cr.P. art. 729.5 A, which provides as follows, in pertinent part:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
At defendant's sentencing hearing in this case, the state moved to introduce a videotape which was confiscated by the police during the search of defendant's residence. Defendant objected on the basis that he was not given notice that the videotape would be introduced. The trial court overruled the objection. The videotape contained scenes of defendant and several of his friends engaged in a party and using drugs and drinking alcohol at defendant's house while he was under house arrest for a prior offense. On appeal, defendant argues that his unawareness of the videotape prevented him "from being in a position to rebut said evidence."
Even when the state's discovery responses are deficient, exclusion of the evidence not disclosed to the defense is not required in all cases. Before the defendant may complain of a discovery violation, he must show prejudice. State v. Sanders, 93-0001, p. 9 (La.11/30/94), 648 So.2d 1272, 1281, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996). In this case, although defendant argues generally that the lack of notice prevented him from rebutting the evidence, he does not indicate in what manner he would have rebutted the evidence if he had received notice that the state intended to use the videotape. In the absence of "any but the most vague suggestion as to how the defense may have suffered prejudice," a defendant fails to show the required prejudice. Sanders, 93-0001 at p. 9, 648 So.2d at 1281. Therefore, this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, defendant's conviction and sentence are hereby affirmed.
CONVICTION AND SENTENCE AFFIRMED.
*224
 APPENDIX A
BY MS. JONES:
 No further questions, Your Honor, unless you have
some.
BY THE COURT:
 No.
 At the sentencing hearing we're required to
consider the sentencing guidelines set forth by Code of
Criminal Procedure Article 894.1 and these thirty-three
odd factors will be taken into consideration.
 The Court had the occasion to try this case for
two and a half days before a plea agreement was entered
between the State and the Defendant and the State
reduced its charge from possession or possession with
intent to sell or possession over 250 grams to
possession with intent to distribute. Was that it?
BY MS. JONES:
 No, Your Honor. It was possession over 28 grams
not -
BY THE COURT:
 Over 28 grams. Excuse me.
 In this case I'm going to consider all factors and
I've gone through a number of factors. The first
factor is whether there's an undue risk that during the
period of suspended sentence or probation the defendant
will commit another crime. It's obvious that Mr.
Jackson did commit another crime while he was on
probation for Judge deMahy in fact during his period of
time there. I saw the video film and to me the whole
room was high with or loaded with some drug which
Officer Marino says was a narcotic rolled in a cigar
wrapper.
 The defendant says he needs help for his drug
addiction. Number 2 is whether the defendant is in
*225
need of correctional treatment or custodial environment
that can be provided most affectively by his commitment
to an institution.
 Three, a lesser sentence will deprecate the
seriousness of the defendant's crime. This is a highly
serious crime. It ain't his first rodeo. This
gentleman has been in trouble all his life and it looks
like it got progressively worse.
 Number 29 says the defendant's criminal conduct
was the result of circumstances unlikely to occur. I
believe there is every circumstances, every, every
indication that a behavior pattern has been set, an
anti-social pattern, that it would continue on a
criminal conduct. I find that there's a continuing
pattern of criminal conduct that Mr. Jackson has
exhibited.
 I do not find that the defendant would be likely
to respond affirmatively to probationary treatment;
Number 30.
 In his defense we heard from Mr. Jackson's Travis,
excuse me, Karen Jackson the defendant's mother. She's
is admitted to be a long-time drug addict and indicated
that she did in fact kick Mr. Jackson out of the home.
She preferred drugs to him. She said her husband also
likewise was a drug addict, drug dealer and worse.
 Marvin Ruffin testified, who is the natural
father, and he is in prison with a thirty-year
sentence. He feels he is the blame, he is to blame. I
think Mrs. Jackson feels that she is to blame.
 We also heard from Carolyn Verdun from Patterson,
Louisiana. She indicated that if you never had any
direction along the right road how you going to know
the right thing to do. And she is of course friendly
*226
with Tempest Jackson who is married to the defendant.
 We heard from Travis Darnell, age eleven, said he
was a good father and a good provider and he was good
in sports and a real nice man.
 Doris Hartman indicated the defendant was a very
sweet person. He should have a second chance cause he
didn't have a chance because his father and mother.
 Lastly we heard from the defendant alone Wybra
Jackson who, who stressed that he did not have a chance
as a kid because his mother and father were drug
addicts, dealers but since that time he's found God and
he doesn't want to leave his family and he want's the
Lord to come down and touch everyone's heart including
this Court.
 Mr. Jackson, I find that based on your responses
to Mr. Senette that you're not a believable person.
Your responses about when you started selling drugs
even any cooperation indicates that you're not
believable. So I discount your testimony. Although
your relatives and friends are well-meaning.
 What we have here is accountability. Everyone has
to account for their lives sometimes. If you and
everybody else like you were allowed to say my father
and mother are, are bad people, not necessarily drug
dealers, but I didn't have a chance so therefore I'm
free to commit crimes. One of the worse crimes I know
of, from my point of view and certainly not in your
culture and not in your  even in your psyche now is
the sale of crack cocaine. It is horrible poison, the
most addictive drug ever known to mankind and yet you
made money on it. And I call that blood money. And
yet you did that because you gave  you said you were
paying your bills, supporting your stepchildren and
*227
that in your eyes is a good thing.
 I guess it shows you how warped you are, Mr., that
you can break the law under some justification, some
sort of primal  I'm bringing meat home to the gave.
That doesn't fly either. We're in a civilized society,
a society with laws. People who don't, don't
understand where the line is, I can see that. If
you're insane I could see some mitigating circumstances
but you're not. Everybody says you're a pretty smart
guy and I believe that you are a smart guy. I just
think that you don't want to work, that you want to do,
sell drugs to make easy money. And certainly the film
was very edifying in the sense that you are  here you
are in hour home with a bracklet on your leg that Judge
deMahy thought he was giving you a chance to stay out
of jail so that you could conduct yourself in a road to
recovery. You had a chance. It looks to me like you
have a criminal history going over a long period of
time, Mr. Jackson. The funny thing is you just don't
even have a clue to this day. You only have a clue as
to what you think it going to get you out of a sentence
to jail.
 The law says that people like you who I believe
are career criminals should be punished. Because your
age may come up to you, I mean, you will miss your 20's
by the sentence I'm about to impose but it may be
you'll wise up and find some way to, maybe some way to
find your way back to the right road, as one witness
said.
 At this time I'd like you to stand up and I'd like
Mr. Ruffin, Miss Jackson, you stand up also. It's the
sentence of this court that you serve twenty-one (21)
years at hard labor. You have three years in which to
*228
file for any appeal, any modification of this sentence.
 I asked you to stand up because there you are, you
two, you got what you raised. But this has got to
stop. There will be zero tolerance from this point
forward. Those children that Tempest has in her hand,
this man's stepchildren, it's got to stop. We're not
going to repeat this. I don't know if the D.A. is
going to multi-bill him but I can assure you 
BY MR. SENETTE:
 No, Your Honor, we're not.
BY THE COURT:
 You're going to have to get your lives straight.
Miss Jackson, you can not stop addiction. You can't
tell me you can stop addiction cold-turkey without
treatment. You said you didn't go. I suggest you to
go to AA meetings or NA.
 For you, Mr. Ruffin, I don't know where it goes
cause you're a sorry sight. You sat here as model to
your son that you failed. Look at your son. This is
what you're giving society. You been irresponsible,
you didn't support him, you never wanted to marry the
mother. You're a sorry person and I wish I could
sentence you for something like this, which is, which
is what Mr. Jackson here has turned out to be. And
that's a shame because he looks like a smart guy. He
was smart enough to get a business going, selling drugs
unfortunately the wrong business.
 Credit for time served. Mr. Jackson, if you want
to find the Lord find the Lord but also I'm going to
recommend before he get's out he go to Bluewaters for
some kind of drug rehabilitation treatment and that's
going to be your salvation. You can take college
*229
courses if you want to, you can finish your GED in
prison. I recommend you do that. Or you can come out
as a hardened thug. You will come out. You will get
out of jail one day, Mr. Jackson. And I hope you
understand what we're doing here and why you have to go
away because I don't think he does yet. Maybe you can
explain it to him, ma'am. So good luck to you, Mr.
Jackson.
BY MS. JONES:
Your Honor, note our objection for the record to
the Court's ruling.
BY THE COURT:
 Thank you very much.
NOTES
[1] LSA-R.S. 15:529.1
[2] The facts are derived from affidavits of probable cause executed by the police and statements of fact made at the Boykin hearing by the prosecutor and defendant.
[3] The distinction between the "formal assignment of errors" (referred to in LSA-C.Cr.P. arts. 844, 916, and 920) and the assignment of errors which must be included in a brief (referred to in Uniform RulesCourts of Appeal, Rule 2-12.4) should be noted.
[4] LSA-C.Cr.P. art. 844(A) provides: "The party appealing shall file with the appellate court a written designation of those errors which are to be urged on appeal and furnish a copy to the trial judge and all counsel. This assignment of errors shall be filed in accordance with the uniform rules of the appropriate appellate court."
[5] The reference to "the uniform rules of the appropriate appellate court" is somewhat confusing. The Uniform RulesCourts of Appeal apply to all five Louisiana Circuit Courts of Appeal. Additionally, each circuit court of appeal may or may not have specific rules governing its procedures. Also, the Louisiana Supreme Court (which has some appellate jurisdiction and could be considered as an "appellate court" under Article 844) has its own rules; but, they are not "uniform rules" as referenced in the statute. Therefore, the statute is not clear.
[6] LSA-C.Cr.P. art. 916, concerning the divesting of jurisdiction of the trial court, still provides that the trial court retains the jurisdiction to extend the time for filing assignments of error, in accordance with Articles 844 and 919, after the entry of an order of appeal.
[7] The Galliano decision involved a per curiam decision on a writ application which cited State v. Thorne, 514 So.2d 1170 (La.1987) [which also involved a per curiam decision on a writ application] and State v. Murphy, 542 So.2d 1373 (La. 1989). In Murphy, 542 So.2d at 1375, n. 4, the Supreme Court stated:

The court of appeal improperly declined to address defendant's contention ... because defendant had not assigned this as a[sic] error. When a contention is made for the first time on appeal, the appellate court may require the defendant to file a supplemental assignment of error, thereby permitting the trial court to make an appropriate response. However, the appellate court may not arbitrarily refuse to consider the contention, especially one of constitutional dimensions, on the basis of the record on appeal. (citation omitted)
This must be contrasted with the Supreme Court's statement in State v. Spell, 399 So.2d 551, 557 (La.1981):
Louisiana Code of Criminal Procedure Art. 844 requires a party to designate those errors which are to be urged on appeal. The scope of review is limited to those errors designated in the assignments of error and those discoverable by a mere inspection of the pleading. LSA-C.Cr.P. art. 920.
Defendant did not include the assignment of error here urged in the assignments of error submitted to the trial judge, and for that reason this assignment of error argued in brief is not before the court for review. State v. Spears, 350 So.2d 603 (La.1977); State v. Marrero, 363 So.2d 494 (La.1978). (footnotes omitted)
Thus, our reading of Galliano, when considered in light of Spell, Murphy, Thorne, and Articles 844 and 920, is that the court of appeal is not required to consider an issue not raised in the assignment of errors, except an issue involving a patent error. However, the court of appeal cannot arbitrarily refuse to consider an issue raised for the first time on appeal and not raised in the formal assignment of errors, especially one of constitutional dimensions. The court of appeal may require the defendant to file a supplemental assignment of errors, thereby permitting the trial court to respond.
Nevertheless, given our holding in this matter, our valiant attempt to decipher these apparent conflicts may be academic.
[8] Two of the circuit courts have published local rules requiring the filing of assignment of errors. See Rules Of The Court Of Appeal, Second Circuit, Supplementing Uniform RulesCourts Of Appeal, Rule 2-4; Court of Appeal, 3rd Cir. Internal Rule 15. This circuit has not adopted a local rule and we found no local rule adopted by the fourth or fifth circuits.
[9] LSA-R.S. 967(B)(1) was amended by Acts 1997, Number 1284, § 1, effective August 15, 1997. The offense in the instant case was committed on February 25, 1997. Thus, LSA-R.S. 967(B)(1) as it existed at the time the offense was committed is applicable.