714 So.2d 819 (1998)
STATE of Louisiana
v.
Daniel JONES.
No. 97 KA 1687.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
Laurie A. White, New Orleans, for Defendant/Appellant Daniel Jones.
Hon. Walter P. Reed, District Attorney, Covington, by Terry M. Boudreaux, Gretna, for Plaintiff/Appellee State.
*820 Before GONZALES, PARRO and GUIDRY, JJ.
GONZALES, Judge.
The defendant, Daniel Jones, was charged by bill of information with driving while intoxicated (DWI), fourth offense, a violation of La. R.S. 14:98. He pled not guilty and, after trial by jury, was found guilty as charged. He subsequently was sentenced to ten years at hard labor. He has appealed, urging two assignments of error.

FACTS
At approximately 2:30 a.m. on November 25, 1995, St. Tammany Parish Sheriff's Officer Barney Tyrney was dispatched to investigate a suspicious person in the parking lot of the E-Z Serve convenience store. Upon arriving in the parking lot, Tyrney observed a white four-door Chevrolet taking up two parking spots with the defendant slumped over in the front seat. Tyrney attempted to open the vehicle but when he was unable to do so, he knocked on the window, yelled and beat on the car until the defendant responded. Subsequently, the defendant unlocked his door and when Tyrney reached in the vehicle he smelled an extremely strong odor of alcohol.
When Jones stepped out of the vehicle, Tyrney observed that he swayed, had poor balance, mumbled, and had a strong odor of alcohol on his breath. Tyrney performed a series of field sobriety tests on the defendant, all of which the defendant failed or was unable to complete. The defendant was arrested but indicated that he did not want his car to be towed or inventoried.
According to Tyrney, the vehicle in which he observed the defendant had its motor running when he arrived and after the defendant awoke he revved its engine up and down and attempted to put the car into gear. Tyrney felt that the defendant was extremely impaired when he observed him. At trial, the defendant stipulated to having three prior DWI convictions.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant contends that there was insufficient evidence to find him guilty of driving while intoxicated. In his brief to this court, the defendant does not contest the three predicate convictions which he stipulated to at trial; nor does he contest the proof of his intoxication in the instant offense. However, the defendant does contend that he was not in operation of the vehicle as he was only sleeping in the vehicle and the engine was not running. He claims someone else drove the car near the location where he was discovered but, because the car had broken down, it had to be pushed into the parking lot and was not operational. Thus, the defendant argues that the state failed to prove that he was in operation of the vehicle.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La.Code Crim. P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
According to La. R.S. 14:98(A)(1)(a), the crime of operating a vehicle while intoxicated includes the operating of any motor vehicle while the operator is under the influence of alcoholic beverages. The statute does not require proof that the defendant was driving a vehicle, and the jurisprudence recognizes that the term "operating" is broader than the term "driving." Operating in some circumstances may mean handling the controls of the vehicle. See City of Bastrop *821 v. Paxton, 457 So.2d 168, 169 (La.App. 2d Cir.1984). In order to operate a motor vehicle, the defendant must have exercised some control or manipulation over the vehicle, such as steering, backing, or any physical handling of the controls for the purpose of putting the car in motion. It is not necessary that these actions have any effect on the engine, nor is it essential that the car move in order for the state to prove the element of operation. State v. Smith, 93-1490, p. 5 (La. App. 1st Cir. 6/24/94), 638 So.2d 1212, 1215 (citing State v. Johnson, 580 So.2d 998, 1001 (La.App. 3rd Cir.1991)).
In the instant case, Tyrney testified that he was dispatched to investigate a suspicious person slumped over in a car in a convenience store's parking lot. When Tyrney arrived at the scene, he observed a white early 1980's model four-door Chevrolet taking up two parking spots with the engine running. Tyrney attempted to open the driver's side of the vehicle. Tyrney tapped on the glass of the driver's side door in an attempt to obtain a response from the defendant, who was the vehicle's sole occupant. The defendant failed to respond. Tyrney tried to open the car doors but found that they were locked. In an attempt to obtain a response from the defendant, Tyrney beat on the vehicle and yelled that he was from the sheriff's office and that the defendant needed to wake up and open the vehicle.
When Tyrney rocked the vehicle, he observed a response from the defendant. The defendant "kind of raised up" in the vehicle, turned, looked at Tyrney, motioned with his left hand, and then attempted to shift the vehicle. Tyrney testified that at that same time the defendant "revved" the vehicle very loudly. The defendant "rev[ved] it up and down, up and down." Tyrney yelled at the defendant not to put the car in gear and to turn the car off. At one point, Tyrney heard the defendant yell back at him using curse words.
While the defendant was revving up the vehicle, Tyrney became concerned that the defendant was going to back into the roadway or drive into the building, so he got into his police unit and positioned it behind the defendant's vehicle in order to prevent the defendant from backing out. According to Tyrney, he would not have had a reason to block in the defendant's car if the engine of the car had not been running. Tyrney testified that the defendant appeared somewhat disoriented and was basically just "jerking" on the gearshift as the motor was revving. The defendant motioned for Tyrney to move away from the vehicle.
When the defendant failed to open the vehicle, Tyrney threatened to shatter the driver's side door window in order to turn off the engine and gain control of the vehicle. Tyrney did not see anyone else in the lot at this time; there was a clerk inside the store and he did not know if she stepped outside. When the defendant finally unlocked the door, Tyrney smelled an extremely strong odor of alcoholic beverages when he opened the car door. Tyrney reached in the car and grabbed the defendant with his right hand and removed the car keys from the ignition with his left hand.
After Tyrney arrested the defendant, the defendant indicated that he did not want the vehicle to be towed and inventoried. Tyrney obtained permission from the clerk to leave the vehicle at the scene and the defendant then signed a form which stated that he did not want the car towed or inventoried. The defendant did not tell Tyrney anything about the condition of the vehicle.
According to Tyrney, the defendant indicated that he had been driving the vehicle and that he was coming home from Arabi. The defendant told Tyrney that he thought he was on 1-10 when Tyrney found him. However, according to Tyrney, when he found the defendant, he was 8 to 12 miles from 1-10. Tyrney also stated that the defendant told him he had had two quarts of beer while at the convenience store. The defendant indicated that he had been taking medication which included pain killers and muscle relaxers for his back.
Tyrney did not remember speaking to the clerk before talking to the defendant but he did remember speaking to the clerk later. Tyrney testified that there was no doubt the engine was running and that he took the keys from the ignition.
*822 Tyrney testified that he concluded that the defendant was operating the vehicle on the night in question and he was extremely impaired. Tyrney was positive that the engine was running when he approached the defendant's vehicle and that he took the keys from the ignition.
Floyd Adams, who testified as a witness for the defense, stated he was a friend of the defendant and was helping him move some of his belongings from Slidell to Arabi when the defendant's car broke down around 10:30 p.m. The car began emitting smoke and they had to push it into the parking lot of the E-Z Serve store. According to Adams, the defendant had been drinking earlier in the evening so Adams drove the car.
A man stopped to help them but he could not determine what was wrong with the car so he offered the defendant and Adams a ride. Adams accepted a ride home from the man but the defendant stayed with the car. According to Adams, the defendant was going to call his brother for help and he did not want to leave his belongings in the car unattended.
The defendant testified that while he and Adams were moving his belongings to Arabi, the car broke down so they pushed it into the store's parking lot. A man offered them a ride and Adams accepted the ride but the defendant did not want to leave his belongings in the car. The defendant called his brother's home and left a message on the answering machine wherein he stated that he needed help because his car had broken down. The defendant stated that he did not really know where the keys were "at first." According to the defendant, he was asleep in his car and slumped over in the seat when he awoke to a police officer who banged on the car and then pulled him out of the car. He claimed the officer banged his head on the car and cursed at him. The defendant denied taking any field sobriety tests and stated that the officer cursed at him. He claimed that the officer subsequently took him to a "little sheriff's department" where he let him sit in the car for approximately one and a half hours before taking him to the jail.
The defendant denied trying to crank the car, putting the keys in the ignition, shifting the car into gear, trying to steer the car, or revving the car's motor. He admitted drinking beer previously but stated that he did not have any beer to drink while at the store. He claimed that he only went to sleep in the car and that the keys were on the dashboard the entire time he was sleeping. The defendant claimed that he could not lock the driver's side door. He admitted to driving earlier in the evening before he drank beer. He agreed that he could have had a few drinks around 10:00 p.m. He denied starting the car in order to keep warm because he claimed the heater did not work. The defendant also claimed that the officer did not ask him about having his vehicle towed; however, he affirmed signing the document which stated that he did not want his vehicle towed. The defendant admitted that it was odd that he stayed with his vehicle in order to protect its contents but he did not want the vehicle towed when he was arrested.
The defendant did not remember the officer asking him questions, particularly asking him whether or not he was operating the vehicle. He denied that the car's motor was running while he was in the parking lot. He claimed the car was unable to run and he did not try to crank the motor. He denied operating the vehicle in the parking lot or after leaving his house after he drank beer.
Brian Breaux, a mechanic who was qualified as an expert in general automotive mechanics, testified that he worked on the defendant's vehicle in 1995 just shortly after Thanksgiving at Auto Tech on St. Bernard Highway. According to Breaux, there was a problem with the car's electrical system which caused the car to stop running and the car would not crank. Breaux was unsure how the car arrived at the shop. He did not know the defendant when he worked on the car. Although the bill for the car was dated 11/26/95, (which, according to the prosecutor, was a Sunday), Breaux stated that the shop was not open on Sunday and that someone else from the shop wrote that date on the bill. The defendant's brother signed the authorization for the work on the car.
*823 Terry Jones, the defendant's brother, testified that he was working the night his brother was arrested and did not get off work until 6:00 a.m. Jones' wife relayed the defendant's telephone message to him. He subsequently went to the parking lot where the defendant's vehicle was located and attempted to crank the car with the extra key but the car would not start. Jones removed all the defendant's belongings from the car and a couple of days later, he towed the car to Auto Tech in Arabi because the defendant told him to take the car to a mechanic. Jones thought it was probably Monday morning when he towed the car to the shop. He did not recall signing an authorization form for work to be done on the car but admitted the signature on the form was his.
Angie Jones, the defendant's sister-in-law, testified that the defendant left a message on her answering machine that he was broken down at the convenience store and needed his brother to tow him as soon as possible. The defendant did not say anything about being arrested. She thought she received the message on a Friday and when she arrived home about 11:30 p.m. the message was already on the answering machine.
Patricia Norris, who works at E-Z Serve Store, testified that on the date in question, she went into work at 11:00 p.m. and was not scheduled to get off until 7:00 a.m. At approximately 2:30 a.m., she noticed a car in the parking lot and saw the defendant (whom she did not know) sleeping in the car. He was slumped over sideways in the front seat. She tried to wake him up but when she was unable to arouse him, she called the sheriff's department. Norris saw a set of keys on the dashboard of the car. According to Norris, when she went outside, the motor of the car was not running and she did not ever hear the car crank. She stated that when the sheriff's officer arrived she told him about the man sleeping in the car. She did not see the officer get the defendant out of the vehicle because she went back inside the store. She did hear the officer ask the defendant, "What in the hell [had he] been drinking." According to Norris, the motor was not running at that time.
Norris did not notice the vehicle in the parking lot when she arrived at work. However, she explained that there are usually five or six cars in the parking lot when she arrives at work. When Norris saw the defendant in the vehicle, he was on the driver's side of the car and no one else was in the vehicle. The car was parked taking up two parking spaces. Norris did not see if the defendant tried to operate the vehicle after the officer arrived because she was inside the store and admitted that it is difficult to hear what is happening outside from inside the store. Norris did not look in the backseat of the car, but nothing in the car caught her eye. The defendant's car was still in the parking lot when she left work.
Tyrney testified on rebuttal that he was absolutely positive that the car was running and the keys were in the ignition. He claimed the defendant assisted him when he filled out the form for the defendant's car not to be towed and that there was an area on the form which asked if the car was operable or not and the answer yes was circled. The defendant signed the form. Tyrney did not observe anything unusual inside the vehicle and stated that he would have noticed if there had been a VCR, stereo, or television in the backseat. According to Tyrney, November 25, 1995, was a Saturday.
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
In the instant case, Tyrney testified that the defendant was in the front seat of the car and the sole occupant of the car, the car's motor was running and the defendant tried to put the car in gear and revved the car's motor. The officer testified that the *824 defendant indicated to him that he had been driving the car. Although a number of defense witnesses, including the defendant, indicated that the car's motor was not running, that the car had broken down and would not crank, and the defendant had not driven the car after drinking beer, the unanimous verdict returned in this case indicates that the jury rejected these witnesses' versions of the incident and relied upon the version given by Tyrney. This court will not assess the credibility of the witnesses or reweigh the evidence. Additionally, when a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls; and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984).
After reviewing the record, we are convinced that a rational trier of fact, viewing all the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the state proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, the elements of driving while intoxicated, fourth offense. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, the defendant contends that he was denied his right to a fair trial because of the trial court's instructions to the jury which were a modified version of an Allen charge. In his brief to this court, the defendant acknowledges that defense counsel failed to object to the charge but contends that counsel was ineffective because of the failure to object. He argues that he was prejudiced as the charge pressured the jury into reaching a verdict of guilty as the court implied that it would not accept a mistrial. He claims the instruction was coercive and confusing.
Initially, we note that a claim of ineffective counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1st Cir.1989), writs denied, 559 So.2d 1374 (La.1990) and 604 So.2d 1297 (La.1992). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
The defendant contends that his trial counsel failed to object to the trial court's giving the jury an alleged modified Allen charge. The Allen charge stems from the United States Supreme Court decision in Allen v. *825 United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In that case, the Court approved of a charge designed to break a jury deadlock and achieve jury unanimity. The predominant thrust of the original Allen charge was that the minority block of jurors, regardless of whether the jurors were inclined toward conviction or acquittal, should reconsider the reasonableness of their opinion, as it was not shared by a majority of the jury. State v. Caston, 561 So.2d 941, 942 (La.App. 2d Cir.1990).
The Louisiana Supreme Court expressly disapproved of Allen charges and held that the giving of such a charge, or any modification thereof, constituted reversible error. State v. Nicholson, 315 So.2d 639 (La. 1975); see State v. Caston, 561 So.2d at 942. The court determined the Allen charge had a coercive effect on the minds of the jurors. The charge emphasizes that the jury had a duty to decide the matter at hand, which implied that the trial judge would not accept a mistrial in the case. Additionally, when the duty to reach a verdict is coupled with the trial court's admonition that those in the minority should reconsider their position, there exists an almost overwhelming pressure to conform to the majority's view. State v. Washington, 93-2221, p. 10-11 (La.App. 1st Cir. 11/10/94), 646 So.2d 448, 454-55; State v. Campbell, 606 So.2d 38, 40 (La.App. 4th Cir.1992).
In the instant case, the court stated:
Well, the jury has sent word they are at this point not able to reach a verdict. I can't give them an Allen charge. As I understand it, Allen charges are prohibited. I do intend to re-read to them beginning at duty not to consider sympathy, bias, or prejudice, duty to deliberate towards reaching a verdict and send them back in to deliberate.
Any problem with that anybody?
The prosecutor stated that it did not have an objection and defense counsel stated, "That's okay, Your Honor."
The court then stated to the jury:
I will read to you again part of these instructions.
As jurors, you are not to be influenced by sympathy, passion, prejudice, or public opinion. You are expected to reach a just verdict.
You should consult with one another, consider each other's views, and discuss the evidence with the objective of reaching a just verdict. Each of you must decide the case for yourself, but only after discussions and impartial consideration of the case with your fellow jurors.
You are not advocates for one side or the other. Do not hesitate to re-examine your own views and to change your opinion if you are convinced you are wrong. But do not surrender your honest belief as to the weight and effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.
I'm sending you back into the jury room to continue your deliberations.
After reviewing the trial court's charge to the jury in the instant case, we do not find that the court's comments constitute a prohibited Allen charge. While the court did ask the jurors not to hesitate in reexamining their views and to change their opinion if convinced they are wrong, the court also instructed the jurors not to surrender their beliefs because of the opinion of other jurors or for the mere purpose of reaching a verdict. The court did not admonish the minority members of the jury to reexamine the reasonableness of their opinions or adherence to their original convictions. Nor did the court state that it would not accept a mistrial. The instant charge does not appear coercive in its total context and does not rise to an Allen/Nicholson level. We do not perceive the charge as so fundamentally unfair that it deprives the defendant of due process. Additionally, the charge in question was part of the original instructions to the jury which the court merely reread to the jurors. Thus, we are unable to find that the defendant's trial counsel was deficient in his failure to object to this charge. Accordingly, the failure to object to the instant charge does not support the claimed constitutionally deficient performance of trial counsel. Therefore, we find no merit to the defendant's claims that *826 trial counsel was ineffective. This assignment of error is without merit.

PATENT ERROR
Although not an assignment of error, the defendant requests a patent error review specifically referring to the trial court's failure to give him notice of the three-year prescriptive period for seeking post-conviction relief.
La.Code Crim. P. art. 930.8(C) provides that, at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for seeking post-conviction relief. However, a failure to do so by the trial court has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. State v. Morgan, 93-2365, p. 5 (La.App. 1st Cir. 12/22/94), 648 So.2d 1063, 1065-1066, writ denied, 95-0207 (La.6/2/95), 654 So.2d 1104.
Rather, because we concur in defense counsel's observation, the district court is directed to give the defendant written notice of the prescriptive period for applying for post-conviction relief within ten days of the rendition of this opinion and to file written proof in the record of the proceedings that the defendant has received notice. See State v. Lewis, 94-2145, p. 8 (La.App. 1st Cir. 11/9/95), 665 So.2d 38, 43.
Additionally, after reviewing the record, we have discovered a second patent sentencing error. Neither the minutes nor the transcript reflect that the defendant was sentenced without benefit of parole, probation, or suspension of sentence for at least one year or fined up to $5000.00 as required by La. R.S. 14:98(E)(1) & (2) (as it read at the time the crime was committed). Although the trial court erred by imposing an illegally lenient sentence, this court will not correct the sentence as the error is in the defendant's favor and the state has not appealed the illegal sentence. See State v. Fraser, 484 So.2d 122 (La.1986).

DECREE
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH ORDERS AND INSTRUCTIONS.
GUIDRY, J., respectfully dissents with regard to affirmance of conviction and sentence, and concurs with remand and instructions portion of Judgment.