739 So.2d 821 (1999)
STATE of Louisiana
v.
Harry ROBERTS, Jr.
No. 98 KA 1706.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
*822 Walter P. Reed, District Attorney, Covington, Dorothy Pendergast, Metairie, Counsel for Appellee, State of Louisiana.
Gwendolyn K. Brown, Baton Rouge, Counsel for Appellant, Harry Roberts, Jr.
Before: LeBLANC, FOGG and PARRO, JJ.
LeBLANC, J.
Defendant, Harry Roberts, Jr., was charged by a two count bill of information with armed robbery, in violation of La. R.S. 14:64, and attempted second degree murder, in violation of La. R.S. 14:27 and 30.1.[1] A jury found defendant guilty as charged on the second count of attempted second degree murder, but on the first count, guilty of the lesser included offense of attempted armed robbery. The trial judge sentenced defendant to imprisonment at hard labor for a term of forty years, without benefit of probation, parole, or suspension of sentence on each count, to be served concurrently. Defendant filed motions for new trial and for reconsideration of sentences, which were denied. He now appeals, urging seven assignments of error.

FACTS
On January 24, 1997 Mary Nadler (Nadler) was working as a cashier at a Texaco gas station in Slidell, Louisiana, when she was shot by a light-skinned black male demanding money. He stood on the opposite side of the counter from her, holding a small handgun in his right hand, while she opened the cash register. He then reached over, grabbed the drawer with his left hand, and placed it on the counter. Before he removed the money, he shot her and she fell to the floor. Nadler did not see him take the money, but assumed he did so. She was shot at close range, sustaining powder burns near her mouth. Nadler saw the perpetrator enter the store earlier that evening and purchase a package of cigarettes. She considered his eyes and face to be distinctive. A surveillance videotape took constant still photographs of both visits. Detective Bobby Campbell of the Slidell Police Department circulated wanted fliers with photographs from the videotape. Responses to the fliers initially led to an investigation of two individuals with similar features; namely, Aaron Marshall (Marshall) and defendant's brother, Bruce Roberts. On January 25, 1997, Marshall's photograph was placed in a *823 photographic line-up viewed by the victim and Steve Crowell (Crowell), a customer present in the station at the time of the assailant's first visit. Crowell, who is slightly mentally retarded, identified Marshall in the line-up. Afterwards, Crowell's whereabouts were unknown.
Nadler selected Marshall's photograph as a "possible" identification, remarking at the time that he had similar features to the suspect. At trial, she explained this suspect was not the perpetrator, but only had similar features. Marshall was filmed on videotape checking into a Baton Rouge hotel at the time of the incident.
In early August 1997, Detective Campbell received an anonymous tip, through a telephone call from Crime Stoppers, which led him to investigate defendant's brother, Bruce Roberts. Although defendant's brother had similar features, his features did not match the photographic evidence. Additionally, defendant's brother was incarcerated in Baton Rouge at the time of the incident. Detective Campbell received a second telephone call, through Crime Stoppers, from a person who had previously dated defendant, informing him he was checking the wrong person, and that defendant was the suspect. The detective acquired defendant's photograph from defendant's mother.
When presented with a second photographic line-up on August 8, 1997, Nadler positively identified defendant as the perpetrator. At trial Nadler testified she was "absolutely" positive of the identification and that defendant was the person who shot her.
Detective Jim Welch and Detective Campbell picked up defendant in Orleans Parish where he had surrendered to the police. After being advised of his rights, and indicating he understood these, defendant gave two statements to the detectives. Defendant initially denied having any knowledge of, or involvement in the incident. After his denial, Detective Campbell showed him the surveillance photographs on the wanted flier, and informed defendant he had been identified by Nadler. At this point, defendant slumped over in his chair, shook his head and stated he wished to speak to an attorney. Questioning ceased and the detectives proceeded to leave the interview room. Upon leaving the room, defendant made an unsolicited statement that he would probably speak with them about the incident after talking to an attorney. Detective Welch explained that defendant stated he thought he really needed to get an attorney before he told them about anything that happened at the Texaco station.
Sergeant Eugene R. Hirstius, an expert in the identification of latent fingerprints, compared a photograph of a latent fingerprint taken from the cash register's drawer with defendant's fingerprint card from a data base and concluded the latent fingerprint was an absolutely positive match of defendant's left thumb.

FINGERPRINT EVIDENCE AND DENIAL OF MOTION FOR NEW TRIAL
Defendant was represented by different counsel at trial and on appeal. Defendant's arguments on appeal differ in some respects from those presented by his trial counsel. At trial and now on appeal, defendant contends the trial judge erred in overruling his objection to the introduction of fingerprint evidence, which was not disclosed in advance of trial. He also argues on appeal that the trial judge erred in denying his motion for new trial, which was partially based on the ruling. However, on appeal, he further states he was lulled into a misapprehension of the strength of the state's case by the state's tardy disclosure and that had he known of the evidence, he would have called expert witnesses to discredit the techniques used by the state. Also, in brief before this court, he questions the fairness of the proceeding, alleging he had insufficient time to prepare to meet the fingerprint evidence. *824 The assertion he lacked sufficient time to prepare, in order to discredit the evidence, was not presented below. Moreover, trial counsel did not seek a recess or a continuance, but instead only sought to suppress the evidence. Additionally, only on appeal does defendant suggest the trial judge erroneously gave deference to the prosecutor on the basis the prosecutor attempted to avoid rules of evidence and fair play.
The state argues it received the fingerprint report on a Friday, and provided it to defendant the next working day, the Monday morning of trial. It argues late disclosure does not constitute grounds for automatic reversal absent a showing of prejudice.
On November 3, 1997, defendant's trial counsel filed a motion for discovery and inspection of the physical evidence the state intended to use at trial. See La. C.Cr. P. arts. 718[2] and 719.[3] He specifically requested information regarding any attempt at lifting fingerprints. On December 30, 1997, the state answered, permitting open file discovery. Trial began on Monday, March 2, 1998.
On March 3, 1998, during the state's opening statements, the prosecutor referred to the processing of the cash register's drawer by a police investigator. Defense counsel objected, seeking to suppress the evidence on the basis he did not receive the information timely, having only heard about the evidence Friday before trial. See La.C.Cr. P. art. 729.3.[4]
Defense counsel stated he received the report on Monday, after the jury had been selected. In contrast, the prosecutor stated he provided the report to defense counsel before the jury was selected. The prosecutor explained the prints were located on Friday before trial, and at that time he asked the police to submit them to the crime lab for analysis. He learned of a match on Friday, and informed defense counsel the same day by telephone. He provided defense counsel with a copy of the report at the first available opportunity on Monday, the day of trial. The trial judge found the state had satisfied its continuing duty to provide discovery as it became available. See La.C.Cr. P. art. 729.3.
Testimony regarding the fingerprint evidence consisted of the following witnesses: (1) Detective Michael Hubert, and (2) Sergeant Hirstius. During the state's examination of Detective Hubert, defense counsel *825 objected to the introduction of State's Exhibit Number 21, a photograph described by Detective Hubert as depicting latent fingerprints taken from the drawer. Defense counsel argued he had not seen the photograph until then. The court overruled the objection, based on its prior reasoning.
Detective Hubert testified he was called to the crime scene, and processed the drawer in order to retrieve any latent fingerprints. He stated he brought the drawer to the office for processing, but he did not testify as to when the processing was actually performed. Following the processing, Sergeant Yates, at an unspecified time, took photographs of latent fingerprints. Detective Hubert did not know when Sergeant Yates provided the district attorney with the photograph; however, at the request of the prosecutor, the detective turned in all of the photographs of fingerprints taken of the drawer, to Sergeant Hirstius on Thursday or Friday before trial began.
Sergeant Hirstius testified he conducted an analysis of the prints on February 27, 1998. He is assigned to the St. Tammany Parish Sheriff's Office's crime lab. On Friday, February 27, 1998, the prosecutor called his office and asked if he would be available to examine some photographs and latent fingerprint lifters that the Slidell police had recovered from the scene. Detective Hubert arrived in his office approximately fifteen minutes later and turned over the latent fingerprint lifters and some photographs. Sergeant Hirstius found two useable prints out of seven latent lifters. He identified State's Exhibit Number 21 as the only latent fingerprint that was able to be identified; it was of excellent quality. He compared the photograph of this print to defendant's fingerprints. He received defendant's fingerprint card from a data base and the fingerprints were identical. The print matched defendant's left thumb. He was "absolutely positive" of the match. His report of the analysis, which was introduced into evidence, was dated February 27, 1998.[5]
During closing argument, defendant's trial counsel argued to the jury that the photographs of the print were available since January 1997, but it was not until the Friday night before the trial that these prints were found. He also argued the state did not produce the person who took the photographs. He noted the state is required to provide discovery but failed to do so, since he only saw the photograph on this date. He suggested to the jury that a doubt was created in the state's case since the photograph was unnecessary if the state produced evidence of a strong identification.
The reason for the delay in analyzing the fingerprints is unclear from the record evidence. However, even if the state had not complied with its continuing duty to disclose, the state's failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to defendant. State v. Busby, 464 So.2d 262, 264 (La.1985), cert. denied, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 165 (1985), rehearing denied, 474 U.S. 1015, 106 S.Ct. 550, 88 L.Ed.2d 478 (1985), vacated on other grounds, 538 So.2d 164 (La.1988); accord, State v. Pooler, 96-1794, p. 44 (La.App. 1 Cir. 5/9/97); 696 So.2d 22, 51, writ denied, 97-1470 (La.11/14/97); 703 So.2d 1288; State v. Bates, 95-1513, p. 7-8 (La.App. 1 Cir. 11/8/96); 683 So.2d 1370, 1375.
For failure to comply with discovery requests, the trial judge is given wide *826 latitude in choosing the appropriate sanction provided in La.C.Cr. P. art. 729.5. Busby, 464 So.2d at 264. Article 729.5 provides:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the state through the district attorney or assistant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of court.
In State v. Arnaud, 412 So.2d 1013 (La. 1982), the state complied with discovery, but was tardy in doing so. The court considered the sanction of suppressing the evidence to be "extreme," explaining that defendant could have asked for a recess or continuance but chose not to do so. Arnaud, 412 So.2d at 1017 (Lemmon, J., concurring). See State v. Foret, 628 So.2d 1116, 1119, n. 2 (La.1993).
On appeal, defendant asserts he was prejudiced because the case hinged on the fingerprint evidence. He argues that the only other evidence was the victim's identification, and that an eyewitness' identification is frequently wrong. He seeks a reversal and a new trial.
Assuming a violation of the discovery articles, defendant has not demonstrated he was prejudiced by the admission of fingerprint evidence. He cross-examined Detective Hubert and Sergeant Hirstius; he argued that doubt was created by questionable circumstances surrounding the fingerprint evidence. Moreover, the evidence against defendant was overwhelming, consisting of a positive identification by the victim, who saw him on two occasions on the date of the incident, surveillance photographs,[6] and an inculpatory statement by defendant to the detectives. Under these circumstances, the fingerprint evidence was cumulative. See e.g., Busby, 464 So.2d at 264-65.
Trial counsel, had he needed additional time to prepare, could have asked for a recess or a continuance, but failed to do so. Furthermore, considering the circumstances herein, there is no showing of prejudice. Thus, we find no merit to these assigned errors.

INEFFECTIVE ASSISTANCE OF COUNSEL, EXCESSIVENESS OF SENTENCE, AND IMMEDIATE IMPOSITION OF SENTENCE FOLLOWING DENIAL OF MOTION FOR NEW TRIAL
Defendant, through his appellate defense counsel, assigns as error his trial counsel's failure to timely file a motion to reconsider sentences. In particular, defendant argues trial counsel's failure to specify any grounds resulted in a waiver of claims of excessiveness and noncompliance with La.C.Cr. P. art. 894.1 C. Thus, he *827 contends he was denied effective assistance of counsel.
Defendant's trial counsel timely filed a motion to reconsider sentences, but failed to articulate any grounds for reconsideration. Defendant's trial counsel filed the motion on April 20, 1998, which was four days after the date of sentencing on April 16, 1998. Additionally, on the day of sentencing, trial counsel gave oral notice of his intent to file the motion. Therefore, the motion is timely. See La.C.Cr. P. art. 881.1 A(1) and A(2). Nevertheless, trial counsel failed to state any grounds for reconsideration. La. C .Cr. P. art. 881.1 D provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
In State v. Spradley, 97-2801, p. 5-6 (La.App. 1 Cir. 11/6/98); 722 So.2d 63, 68, we explained:
Concerning the defendant's claim of ineffective assistance of counsel, we note that a claim of ineffective counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1 Cir.1989), writs denied, 559 So.2d 1374-75 (La. 1990) and 604 So.2d 1297 (La.1992). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La. App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
In the instant case, defense counsel's failure to articulate reasons in the motion to reconsider sentences has not prejudiced defendant. Even assuming the specific grounds argued herein were raised, we find no merit to these assigned errors, since the record reflects there is no abuse in the trial judge's discretion in imposing the sentences.
In State v. Fairley, 97-1026, p. 6 (La. App. 1 Cir. 4/8/98); 711 So.2d 349, 352-53, we stated:

*828 Article I, Section 20, of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
Here, in imposing the sentences, the trial judge stated:
I've taken into consideration the report containing the pre-sentence investigation and I'm impressed by the fact that you are still not accepting responsibility for this crime which you were found guilty.
And taking into consideration plus your long criminal history, I feel that any lesser sentence than 40 years on the attempted armed robbery and 40 years on the attempted second degree murder would deprecate the seriousness of the offense [sic].
I sentence you therefore, to 40 years to run concurrently on each offense on the attempted armed robbery and on the attempted second degree murder to the Department of Corrections without benefit of probation, parole or suspension of sentence.
The penalty provision for armed robbery is imprisonment "at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence." La. R.S. 14:64 B. Defendant was found guilty of attempted armed robbery. La. R.S. 14:27 and 64. La. R.S. 14:27 D(3) provides that the penalty for attempted armed robbery cannot exceed one-half of the maximum term for armed robbery. Thus, the maximum possible sentence on the attempted armed robbery charge is 49 years. Therefore, appellant received less than the maximum sentence.
The penalty provision for second degree murder is "life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." La.R.S.14:30.1 B. For attempted second degree murder, the penalty is "imprison[ment] at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence[.]" La. R.S.14:27 D(1). Defendant's sentence was less than the maximum.
In State v. Jackson, 98-0004, p. 11-12 (La.App. 1 Cir. 11/6/98); 724 So.2d 215, 222, we held:
A trial court should give weight to the sentencing guidelines and must state for the record the considerations taken into account and the factual basis for the sentence imposed. LSA-C.Cr.P. art. 894.1(B) and (C). The trial court is not required to list every aggravating or mitigating factor as long as the record shows ample consideration of the guidelines. Thus, even without full compliance with Article 894.1, remand is unnecessary when the record clearly reflects an adequate basis for the sentence. State v. Ledet, 96-0142, p. 17 (La.App. 1 Cir. 11/8/96), 694 So.2d 336, 346, writ denied, 96-3029 (La.9/19/97), 701 So.2d 163. Moreover, under Article 881.4(D), an appellate court will not set aside a sentence as excessive if the record supports the sentence imposed. See State v. Bennett, 623 So.2d 74, 78, n. 2 (La.App. 1 Cir.1993), writ denied, 93-2128 (La.3/11/94), 634 So.2d 404 [emphasis added].
*829 In State v. Miller, 96-2040, p. 3 (La.App. 1st Cir.11/7/97); 703 So.2d 698, 701, writ denied, 98-0039 (La.5/15/98); 719 So.2d 459, the trial judge imposed a sentence without giving any reasons. We held:
When reviewing a sentence alleged to be excessive and lacking a factual basis, if this court concludes the sentence is otherwise supported by the record, the sentence may be affirmed without a remand for resentencing or supplementation merely for compliance with article 894.1 [citations omitted].
Miller, 96-2040 at 4; 703 So.2d at 701.
Although the trial judge in the instant case did not provide extensive reasons for sentencing, his reasons and the record reveal sufficient information to support the imposition of the sentences. See Miller, 96-2040 at 5, 703 So.2d at 702.
The trial judge ordered and carefully considered a presentence investigation report (PSI). The PSI recommended lengthy incarceration and noted ineligibility for the impact program. See La.R.S. 15:574.4.
The trial judge stated he reviewed the PSI, which revealed a lengthy criminal history. The PSI mentions numerous arrests and convictions for crimes against the person. Defendant is a second felony offender. He has a prior conviction of not guilty by reason of insanity to armed robbery, for which he is currently on indefinite probation. His criminal history began as a juvenile in 1973, and covers a twenty-four-year period. For the prior armed robbery conviction, he was committed to a state mental hospital. Defendant denied involvement in the current charges. At the time of the instant offenses, defendant was not a youthful offender since he was approximately thirty-seven years of age.
Defendant was found guilty of committing serious crimes and received sentences which were below the maximum. Considering the reasons given by the trial judge, the facts surrounding the offenses, the record, and the criteria of Article 894.1, we find no abuse of discretion. La.C.Cr. P. art. 894.1. The record supports the sentences imposed. See La.C.Cr. P. Art. 881.4 D. Thus, even assuming trial counsel failed to preserve defendant's claims in the motion to reconsider sentences, we find no prejudice to defendant supporting a claim for ineffective assistance of counsel.
Defendant also argues the trial judge failed to wait the mandatory period of twenty-four hours between the denial of the motion for new trial and the imposition of sentences as required by La.C.Cr. P. art. 873. After denying the motion for new trial, the trial judge inquired whether defendant was ready for sentencing. Defense counsel replied defendant was ready for sentencing.
We have held:
By failing to enter a contemporaneous objection when the trial court indicated that it would sentence the defendant before ruling on his motion for new trial, and by announcing a readiness for sentencing, we find an implicit waiver by the defendant of the twenty-four hour waiting period required by Article 873.
State v. Lindsey, 583 So.2d 1200, 1206 (La.App. 1 Cir.1991), writ denied, 590 So.2d 588 (1992).
We find no merit to these assigned errors.

CREDIT FOR TIME SERVED
Defendant argues the trial judge erred in failing to give him credit for time served. Defendant was sentenced on April 16, 1998. Although the minutes show that the trial court, in imposing this sentence, gave defendant credit for time served, the sentencing transcript reflects no such credit. Such an allowance of credit is mandatory. La.C.Cr. P. art. 880. See State v. Greer, 572 So.2d 1166, 1172 (La. App. 1 Cir.1990). However, the amendment of Article 880 by 1997 La. Acts, No. 788, § 1, effective August 15, 1997, rendered the giving of credit for time served automatic, without the necessity or formality *830 of the trial court having to so state. See State v. Hayes, 97-1526, p. 7 (La.App. 1 Cir. 5/15/98); 712 So.2d 1019, 1023, writ granted on other grounds, 98-1603 (La.12/11/98); 729 So.2d 584. This assignment is meritless.

POST-CONVICTION RELIEF
Defendant correctly argues that at the time of sentencing, the trial judge failed to advise him of the three-year time limitation contained in La.C.Cr. P. art. 930.8 C for the filing of post-conviction relief applications. Although the minutes show defendant was advised of the limitation, the transcript reveals he was not given the information. Failure to advise defendant of the time limitation does not constitute grounds for reversal of the sentence or remand for resentencing. State v. Jones, 97-1687, p. 12 (La.App. 1 Cir. 5/15/98); 714 So.2d 819, 826, writ denied, 98-1597 (La.10/30/98); 723 So.2d 975; State v. Lewis, 94-2145, p. 8 (La.App. 1 Cir. 11/9/95); 665 So.2d 38, 43; State v. Morgan, 93-2365, p. 5 (La.App. 1 Cir. 12/22/94); 648 So.2d 1063, 1065, writ denied, 95-0207 (La.6/2/95); 654 So.2d 1104. Therefore, the trial court is directed to give defendant written notice of the prescriptive period for applying for post-conviction relief within ten days of the rendition of this opinion and to file written proof in the record of these proceedings that defendant has received notice. Jones, 97-1687 at 12; 714 So.2d at 826; Lewis, 94-2145 at 8; 665 So.2d at 43; Morgan, 93-2365 at 5; 648 So.2d at 1066.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Defendant was originally charged with one count of armed robbery, but the bill of information was later amended to add the second count of attempted second degree murder. Defendant pled not guilty to both counts.
[2] La.C.Cr. P. art. 718 provides in part:

Subject to the limitation of Article 723 [state reports and other matters not subject to disclosure], on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
* * * * * *
(2) are intended for use by the state as evidence at the trial[.]
[3] La.C.Cr. P. art. 719 A provides:

Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of a physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this Article even though it is not intended for use at trial.
[4] La.C.Cr. P. art. 729.3 provides:

If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
[5] Defendant states in brief that trial counsel objected to the procedure used to obtain defendant's fingerprints, and notes that defendant was forcibly restrained and fingerprinted during the course of trial. However, the fingerprint analysis was conducted prior to trial. Additionally, defendant's objection to the taking of his fingerprints, and the trial judge's ruling that he be fingerprinted, occurred outside the presence of the jury, following the state's request.
[6] We have examined the seven still photographs taken from the videotape (State's Exhibits Nos. 8, 9, 10, 11, 12, 13, 14), and note that four of the photographs provide a clear, unobstructed view of the perpetrator. (State's Exhibit Nos. 8, 10, 11, 12). Two larger prints taken of the perpetrator (State's Exhibits Nos. 6 and 7) provide a view from another angle. State's Exhibit Number 7 is a clear and unimpeded photograph, showing most of his facial features. The state also introduced State's Exhibit Number 15, a Polaroid photograph of defendant, which bears a striking resemblance to the four photographs from the videotape.